# In the United States District Court
## for the District of Kansas

---

**United States of America**,
                                        Plaintiff,

v.                                                    Case No. 23-20006-DDC

**Kyle Davey**,
                          Defendant.

---

## Motion to Dismiss Count II

---

Kyle Davey moves the Court, pursuant to Federal Rules of Criminal Procedure 12(b)(3)(B), to dismiss Count II of the Indictment, which charges possession of a firearm while being an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3).

First, the Court should dismiss Count II because § 922(g)(3) is a violation of the Second Amendment right to bear arms considering the U.S. Supreme Court's recent ruling in *New York State Rifle and Pistol Association v. Bruen*, 142 S. Ct. 2111 (2022). The restriction contained in § 922(g)(3) prohibits possession of a firearm for any person "who is an unlawful user of or addicted to a controlled substance." Because the Government cannot demonstrate that prohibiting such conduct is consistent with the Nation's historical tradition of firearm regulation, Count II must be dismissed.

Second, as a matter of law, Mr. Davey is not an "unlawful user" under § 922(g)(3). Using a controlled substance is not illegal under Federal or Kansas state law. Section 922(g)(3) is only violated when an "*unlawful* user" possesses a firearm, not simply a "user". Consequently, Mr. Davey has not violated § 922(g)(3).

Third, if the government contends that Mr. Davey is an "unlawful user," then §922(g)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. The statute fails to give ordinary people fair notice of the conduct it punishes because it does not define the term "unlawful user." Thus, a citizen must guess at what point they, after unlawfully using a controlled substance, may lawfully possess a firearm.

Fourth, Mr. Davey asserts § 922(g)(3) violates the Commerce Clause. The Tenth Circuit Court of Appeals held an unlawful user cannot possess any firearm that crossed state lines "at some point in its existence." *United States v. Patton*, 451 F.3d 615, 634-35 (10th Cir. 2016). This Court is bound by the Tenth Circuit's interpretation of "affecting commerce" in *Patton*. Mr. Davey raises this issue to preserve it for future consideration.

## I.    Background

On January 9, 2021, officers with the Lenexa Police Department and Shawnee Police Department executed a search warrant at 20500 W. 47th St., Shawnee, KS. Officers located numerous stolen items, approximately five grams of methamphetamine, and two large gun safes. Officers identified 45 firearms,

ammunition, and various firearms parts at the residence. Kyle Davey was arrested at the scene. Officers recovered roughly two grams of heroin from Mr. Davey when they searched him. Mr. Davey admitted to using heroin on a daily basis.

On February 8, 2023, a 2-count indictment was filed against Mr. Davey in federal court. He was charged with one count of Illegal Possession of a Machinegun in violation of 18 U.S.C. § 922(o), and one count of Possession of a Firearm by an Unlawful User of a Controlled Substance in violation of 18 U.S.C. § 922(g)(3). Mr. Davey was ordered detained pending the resolution of this case. He now files this Motion to Dismiss Count II of the Indictment.

## II .   On Its Face, § 922(g)(3) Unconstitutionally Infringes on an Individual's Right to Bear Arms Under the Second Amendment.

The Second Amendment to the United States Constitution "confer[s] an individual right to keep and bear arms." *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008). This right "shall not be infringed." U.S. CONST. amend. II. The right to keep and bear arms is fundamental, applicable against state and local governments, and entitled to the same protections as other fundamental rights enshrined in the Constitution. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010). Still, Congress passed §922(g)(3), a law that strips citizens of rights guaranteed to them by the Second Amendment without historical precedent. The criminalization of the possession of firearms falls within the scope of the Second

Amendment. Thus, the blanket prohibition on firearm possession by those who are unlawful users of or addicted to a substance made unlawful by the federal Controlled Substances Act is unconstitutional.

After the United States Supreme Court's *Heller* decision in 2008, "most federal appellate courts "coalesced around a 'two-step' framework for analyzing Second Amendment challenges that combine[d] history with means-end scrutiny." *New York State Rifle and Pistol Association v. Bruen*, 142 S.Ct. at 2122. However, in *Bruen*, the Court adopted a new standard for determining the constitutionality of regulation based on the Second Amendment. In rejecting the means-end scrutiny, the Court held that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id*. at 2129-30. It further stated that "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. *Id*.

### A. The Second Amendment's plain text cover's Mr. Davey's conduct.

In *Bruen*, the Court stated that the Second and Fourteenth Amendments "protect an individual's right to carry a handgun for self-defense outside the home." *Id*. at 2122. Section 922(g)(3) is a bar on firearm possession regardless of whether it is carried in a public place or kept in the home for self-defense.

The Supreme Court has also held that " 'the people' … unambiguously refers to all members of the political community, not an unspecified subset," further explaining that the term refers to "a class of persons who are part of a national

community or who have otherwise developed sufficient connection with this country to be considered part of that community." *District of Columbia v. Heller*, 554 U.S. at 580 (quoting *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990)). The Court concluded that there is a "strong presumption" that the Second Amendment right to keep and carry handguns publicly for self-defense "belongs to all Americans." *Id*. at 581; *Bruen*, 142 S.Ct. at 2156 ("The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." (quoting *Heller*, 554 U.S. at 581)).

Mr. Davey is a United States citizen who has resided in the District of Kansas his entire life. This makes him "part of the 'national community,' and thus part of 'the people' to whom the Second Amendment guarantees the right to keep arms. *United States v. Harrison*, No. CR-22-00328-PRW, 2023 WL 1771138, at *3 (W.D. Okla. Feb. 3, 2023) (pending on appeal Tenth Circuit Case No. 23-6028). The Tenth Circuit has not yet addressed the question. But the Fifth Circuit has held that an alleged drug user is, of course, "a member of our political community." *United States v. Daniels*, __ F.4th __, 2023 WL 5091317, at *3 (5th Cir. Aug. 9, 2023). "More than just model citizens enjoy the right to bear arms." *Id*. at *4. Other District Court decisions in this Circuit also support this conclusion. *See United States v. Carrero*, No. 2:22-CR-00030, 2022 WL 9348792, at 2 (D. Utah Oct. 14, 2022) ("This court declines to read 'the people' so narrowly. Instead, it follows court from within the Tenth Circuit, which have observed that 'convicted felons fall

within "the people" as contemplated by the First and Fourth Amendments.'
Applying the presumption of consistent usage, they have 'decline[d] to carve out
felons from the scope of the Second Amendment's protection of "the people,"' and
this court does the same." (quoting *United States v. Coombes*, No. 22-CR-00189,
2022 WL 4367056, at 4 (N.D. Okla. Sept. 21, 2022)); *Coombes*, 2022 WL 4367056, at
4 ("[I]t is clear that convicted felons fall within 'the people' as contemplated by the
First and Fourth Amendments. Based on existing precedent and well-established
canons of construction, the court declines to carve out felons from the scope of the
Second Amendment's protection of 'the people.'"); *United States v. Gray*, No. 22-CR-
00247-CNS, 2022 WL 16855696, at 2 (D. Colo. Nov. 10, 2022) ("The Court adopts
the analysis of its sister district courts within the Tenth Circuit and finds that
Defendant is covered by the Second Amendment's plain text.").

### B. The Government cannot meet its burden to show that § 922(g)(3)'s restrictions are "consistent with the Nation's historical tradition of firearm regulation."

The second step of the *Bruen* analysis places the burden on the government
to demonstrate that the regulation is consistent with the "Nation's historical
tradition of firearm regulation." Under *Bruen's* new model, disarmament laws that
address persistent social problems require evidence that similar provisions existed
at the time of ratification. "[W]hen a challenged regulation addresses a general
societal problem that has persisted since the 18th century, the lack of a distinctly
similar historical regulation addressing that problem is relevant evidence that the
challenged regulation is inconsistent with the Second Amendment." *Bruen,* at 2131.

With this understanding, the government cannot meet its burden to show that the Nations history, particularly around the passage of the Second Amendment, supports firearm restrictions for those who unlawfully used or are addicted to a controlled substance.

As in *Heller* and *Bruen*, historical examples of regulations offered by the government must be "distinctly similar" to § 922(g)(3) because the restriction does not address "unprecedented societal concerns or dramatic technological changes[.]" *See Bruen*, 142 S.Ct. at 2132-33. "[T]he societal problem addressed by § 922(g)(3), possession of firearms by users of substances with the potential for abuse, is not new." *Harrison*, 2023 WL 1771138, at *6.

There are no "distinctly similar" regulations from the founding. *See Harrison*, 2023 WL 1771138, at *6-9. Indeed, the history of barring firearm possession by those who use or are addicted to controlled substances is limited and relatively recent. Congress first passed § 922(g)(3) in 1968. *See* Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213 (codified at 18 U.S.C. § 921 *et seq*.). This was the first time in the Nation's history that Congress enacted such a ban. Furthermore, it was not until a 1986 amendment to the statute that 1) simple possession of the firearm was included in the prohibited acts and 2) "substances" was expanded to substances in section 102 of the Controlled Substances Act. *See* Firearm Owner's Protection Act, Pub. L. No. 99-308, §§ 102(6)(B), (D), 100 Stat. 449, 452 (1986). The government cannot rely on the passage of a mid-twentieth century statute to establish a long-standing historical tradition dating back to the enactment of the Second

Amendment. *See Bruen*, 142 S.Ct. at 2137. In fact, the Supreme Court specifically declined to consider any twentieth century evidence offered by the respondents in *Bruen*, noting it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id*. at 2154, n. 28.

Nor can the Government rely on the general pronouncement by the Supreme Court in *Heller* that presumptively lawful regulatory measures include: "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Heller* at 626-27. The list does not include those who are accused of being unlawful users of or addicted to a controlled substance. Those regulations would not be "distinctly similar" to § 922(g)(3) to address a "general societal problem." Even if § 922(g)(3) were a uniquely modern regulation, such that the Court could expand its historical analysis to include merely similar historical analogues, those longstanding regulations are not "relevantly similar" because they do not impose a comparable burden or evince comparable justifications. *See Bruen*, 142 S.Ct. 2132-33; *Harrison*, 2023 WL 1771138, at *10-11. While the examples provided by the Court in *Heller* were not exhaustive, they all comport with a historical principle of disarming select groups for the sake of public safety. *See* NRA, 700 F.3d at 200-01 (citing Saul Cornell, *Commonplace or Anachronism: The Standard Model, the Second Amendment, and the Problem of History in Contemporary Constitutional Theory*, 16 Const. Comment. 221, 231-36 (1999)).

There is no comparable "public safety" justification for disarming all drug users. Moreover, the Supreme Court has since explained that the "government may not simply posit that the regulation promotes an important interest." *Bruen*, 142 S.Ct. at 2126. Therefore, the Government cannot rely on general public safety justifications to uphold § 922(g)(3).

### III.    As a Matter of Law, Mr. Davey is Not an Unlawful User Under § 922(g)(3).

Count II must be dismissed because it fails to state an offense. Fed. R. Crim. P. 12(3)(B)(v). That count charges Mr. Davey with being an "unlawful user" in possession of a firearm, but as a matter of law Mr. Davey is not covered by this statute because it was not unlawful for him to use a controlled substance, and the government has not charged that it was.

Statutory  interpretation begins with the language of the statute. *Dean v. United States*, 556 U.S. 568, 572 (2009). The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-254 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' " *Id*. at 254.

Here, the statutory language is clear and unambiguous; § 922(g)(3) prohibits firearm possession by "an unlawful user of" or someone who is "addicted to any controlled substance" as defined in the Controlled Substances Act, 21 U.S.C. 802. Mr. Davey is charged as "an unlawful user" of a controlled substance.

But under the Controlled Substances Act, it is not unlawful to "use" drugs. 21 U.S.C. § 841(a) lists the prohibited acts with respect to controlled substances. Under that section, it is unlawful to "manufacture, distribute, or dispense, or possess with intent to  manufacture, distribute, or dispense, a controlled substance" or "to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance." 21 U.S.C. § 841(a). It is also unlawful for persons registered to dispense or distribute controlled substances in the course of a legitimate business to do so outside that legitimate purpose, or to act outside the terms of that authorization in various ways. 21 U.S.C. §§ 842(a), 843(a). It is unlawful to possess a controlled substance without a valid prescription. 21 U.S.C. § 844. But it is not prohibited to be a "user" of a controlled substance.[1]

Conversely, Congress did not make it illegal to simply be a "user" of a controlled substance in possession of a firearm. One must be an "unlawful user." This Court should not view the word "unlawful" as mere surplusage. *See Ratzlaf v. United States*, 510 U.S. 135, 140-41 (1994) ("Judges should hesitate. . . .to treat [as surplusage] statutory terms in any setting, and resistance should be heightened when the words describe an element of a criminal offense.").

In the context of defining a crime, adding a judicial gloss to broaden the offense is impermissible. "Congress, rather than the executive or judicial branch,

---

[1] Likewise, it is not illegal to use a controlled substance under Kansas law. KSA 21-5706 makes it unlawful to possess a controlled substance. KSA 21-5705 makes it unlawful to distribute, possess with intent to distribute, or cultivate a controlled substance. Kansas does not have a statute that makes it unlawful to use a controlled substance.

define what conduct is sanctionable and what is not." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211 (2018). Of course, one can unlawfully possess a controlled substance under § 841, but not use it. It happens all the time. Many people prosecuted for distributing controlled substances do not use them. The Controlled Substances Act prohibits specific conduct, like manufacturing, distribution or possession of controlled substances. But it does not prohibit use. Congress's decisions to prohibit certain acts and not others must be respected. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020)("[I]t is not the proper role of the courts to rewrite the laws passed by Congress and signed by the President.").

The government has not charged any manner in which Mr. Davey is an "unlawful user" of a controlled substance.

## IV.   Section 922(g)(3) Violates Mr. Davey's Due Process Rights Because the Statute is Unconstitutionally Vague.

Section 922(g)(3) prohibits possession of a firearm where an individual is found to be "addicted to" or an "unlawful user of" a controlled substance. However, the statue itself fails to define what it means to be an addict, or one who unlawfully uses a controlled substance, thereby creating several vagueness problems.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST., amend. V. Courts have long held that "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague, that it fails to give ordinary people fair notice of the conduct it punishes or so standardless that it

invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 596 (2015) (citing *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983)). In addition to violating due process guarantees, vague laws contravene the basic tenet of the separation of powers doctrine. *U.S. v. Davis*, 139 S. Ct. 2319, 2325 (2019) (affirming that vague laws allow "relatively unaccountable police, prosecutors, and judges," rather than elected representatives, to define the law thereby undermining "democratic self-governance"); see also *Kolender*, 461 U.S. at 358 ("[I]f the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, [it would] substitute the judicial for legislative department.").

Facial vagueness challenges are permissible because "[i]n our constitutional order, a vague law is no law at all." *Davis*, 139 S.Ct at 2323. Thus, where a law is so vague it violates a defendant's due process rights, "the role of courts under our constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Id.; see Johnson,* 576 U.S. at 598 (permitting a facial vagueness challenge).

"To withstand a vagueness challenge, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *United States v. Lynch*, 881 F.3d 812, 818-19 (10th Cir. 2018). Section 922(g)(3) fails both prongs of the vagueness test.

### A. Section 922(g)(3) is facially void because the text fails to provide adequate notice as to who is prohibited and when.

Congress's decision not to define key terms within § 922(g)(3) renders the statute facially invalid because it fails to provide individuals of common intelligence notice as to whether and when they fall within its proscribed class. As written, § 922(g)(3) must be stricken as facially void-for-vagueness. *See United States v. Morales-Lopez*, No. 2:20-CR-00027- JNP, 2022 WL 2355920, at *8 (D. Utah June 30, 2022) (pending on appeal in Tenth Circuit Case No. 22-4074). The Tenth Circuit has not yet addressed the facial vagueness of § 922(g)(3), but the district court in *Morales-Lopez* persuasively explained why that statute fails due process vagueness standards.

While the statute does reference a definition of "controlled substance," it provides no such definition for the terms "addicted to" or "unlawful user." "In interpreting statutes, it is the duty of the court to give effect, if possible, to every clause and word of a statute." *Morales-Lopez*, 2022 WL 2355920, at *8. "Here the legislature included two categories of individuals covered by the statute." *Id*. "Thus, the court must give independent meaning to unlawful user and a person addicted to a controlled substance." *Id*.

The term "addict" is defined as: (1) "one exhibiting a compulsive, chronic, physiological or psychological need for a habit-forming substance, behavior, or activity," or (2) one strongly inclined to do, use, or indulge in something repeatedly." *See* Merriam-Webster.com (2022) (definition of "addict"), https://www.merriam-webster.com/dictionary/addict. However, the statute does not establish when a

behavior becomes compulsive or chronic, or how an individual prosecutor, judge, or jury, will determine when a behavior, or activity, has become a physiological or psychological need or habit. Also, the statute fails to clarify exactly what the government must prove. Must there be some overt act or is an attempt sufficient? Is the inclination to use a substance without action enough to deprive one of their constitutional rights? Similarly, how can a defendant know if they are "strongly inclined" to do, use, or indulge in something repeatedly without further clarification?

Congress did define the term "addict" (but not "addicted to") in a different chapter of the Code. "The term 'addict' means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction." 21 U.S.C. §802. An initial issue with the use of this definition is that it refers to "narcotics" and not "controlled substances." Is it possible for someone to be "addicted to" a controlled substance that is not a narcotic? Furthermore, the statute does not designate what amount of use is "habitually," or at what point a user has "endangered the public morals, health, safety, or welfare" – and of who? Or, at what point has a user "lost the power of self-control?"

Turning to the term "user," it must be something less than an addict. *Morales-Lopez,* 2022 WL 2355920, at *8. No statute defines "unlawful user." The dictionary simply defines the term as: "one who uses." *See* Merriam-Webster.com

(2022) (definition of "user"), https://www.merriam-webster.com/dictionary/user. Section 922(g)(3), therefore, prohibits firearm possession by one who unlawfully "uses" a controlled substance, but does not clarify if there are any temporal constraints on when such use took place. Thus, on its face, the statute would prohibit anyone who has ever unlawfully used a controlled substance from possessing a firearm.

In addition to failing to define "user" in a way that provides adequate notice, § 922(g) also "fails to define the requisite temporal proximity between unlawful drug use and firearm possession." *Morales-Lopez*, 2022 WL 2355920, at *9. "Because the term 'user' does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm." *Id.* Without a temporal link or defined threshold for determining when the prohibited status begins, individuals are left to read § 922(g)(3) with the understanding that "once a user, always a user." In *Morales-Lopez*, the District Court stated, "this court finds an interpretation that would make gun possession at any point in a person's life after a single instance of ingesting drugs absurd." *Morales-Lopez,* 2022 WL 2355920, at *8.

Courts' "repeated attempts and repeated failures to craft a principled and objective standard" into § 922(g)(3) "confirm its hopeless indeterminacy." *Johnson*, 576 U.S. at 598. "Judicial efforts to define the statute do little to allay the confusion" about the meaning of § 922(g)(3). *Morales-Lopez*, 2022 WL 2355920, at *9. Courts have reached varying conclusions about the scope of the statute. *Id.*

(collecting cases). In assessing the constitutionality of § 922(g)(3), the Seventh Circuit noted unlawful drug users "could regain [their] right to possess a firearm by simply ending [their] drug abuse." *United States v. Yancey*, 621 F.3d 681, 696 (7th Cir. 2010). But the Fourth Circuit concluded, "[s]ection 922(g)(3) does not forbid possession of a firearm *while unlawfully using* a controlled substance. Rather the statute prohibits *unlawful users* of controlled substances…from possessing firearms. *U.S. v. Jackson*, 280 F.3d 403, 406 (4th Cir. 2002). Moreover, several circuits, including the Fifth Circuit, have rejected such an expansive interpretation of § 922(g)(3) recognizing that a temporal nexus must be read into the statute to avoid rendering it unconstitutional. *See United States v. Patterson*, 431 F.3d 832, 839 (5th Cir. 2005) (upholding § 922(g)(3) against an "as applied" vagueness challenge) (citing *United States v. Turnbull*, 349 F.3d 558, 561 (8th Cir. 2003) (citations omitted)). Thus, the plain language of the statute renders § 922(g)(3) unworkable because it is subject to multiple interpretations each more problematic and ambiguous than the last. Courts conclude that "the covered conduct falls somewhere in the chasm between a single use and an addict" but "[t]he statute provides no further guidance for this court—nor for citizens attempting to understand the standards to which they will be held." *Morales-Lopez*, 2022 WL 2355920, at *8. Instead, "the decisions of these courts smack of 'I know it when I see it,' the hallmark of arbitrary enforcement." *Morales-Lopez*, 2022 WL 2355920.

Turning to the context of the broader statute, the vagueness concerns of § 922(g)(3) are compounded. Unlike § 922(g)(1) (possession of a firearm by a felon)

or § 922(g)(4) (possession of a firearm by one adjudicated as a mental defective or who has been committed to a mental institution), § 922(g)(3) has no adjudication requirement or prerequisite of a discrete act, such as commitment to an institution, prior to receiving the restricted status. Without a discernable threshold for when one obtains the status "addict" or "unlawful user of" a controlled substance, it cannot be said that the statue is unambiguous, nor does it provide an ordinary person notice of the statutory proscriptions.

Likewise, congressional intent sheds no light on the ambiguities. The legislative record indicates that "the principal purpose of the federal gun control legislation … was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Huddleston v. United States*, 415 U.S. 814, 824 (1974) (quoting S. Rep. No. 1501, 90th Cong., 2d Sess., 22 (1968)); U.S.Code Cong. & Admin. News 1968, p. 4410; *see, also*, Congressman Celler, the House Manager ,114 Cong. Rec. 13647, 21784 (1968) ("No one can dispute the need to prevent drug addicts, mental incompetents, persons with a history of mental disturbances, and persons convicted of certain offenses, from buying, owning, or possessing firearms. This bill seeks to maximize the possibility of keeping firearms out of the hands of such persons.").

Subsequent legislative history of § 922(g)(3), however, is telling. Since its passage, Congress has amended § 922(g)(3) several times but at no time has it clarified what it means to be "addicted to" or "an unlawful user of" the prohibited substance(s). *See, e.g.,* H.R. REP. 99-495, 99th Cong., 2d Sess., 14, 1986

U.S.C.C.A.N. 1327, 1340 (expanding the list of substances prohibited under

§ 922(g)(3)); H.R. REP. 91-1549, 91st Cong., 2d Sess., 1970 U.S.C.C.A.N. 4007,

4011(prohibiting the sale of explosives to "drug addicts"). Congress did, however,

provide guidance under the National Instant Criminal Background Check System

Improvement Amendments Act of 2007 in which it stated, for purposes of §

922(g)(3), that a record:

> identifies a person who is an unlawful user of, or addicted to a controlled
> substance (as such terms "unlawful user" and "addicted" are respectively
> defined in regulations implementing section 922 (g)(3) of title 18, United
> States Code, as in effect on the date of the enactment of this Act) as
> demonstrated by arrests, convictions, and adjudications, and whose record is
> not protected from disclosure to the Attorney General under any provision of
> State or Federal law.

H.R. REP. 115-437, 20. Though this, too, fails to supply a definition for what it

means to be a "addicted to" or "an unlawful user of" a controlled substance.

Congress has, at the very least, demonstrated that it is possible and desirable for

the Attorney General to obtain verifiable information establishing a history of drug

use as it relates to § 922(g)(3). It follows then that Congress has the ability, as well

as the constitutional mandate, to abandon § 922(g)(3) or amend it so an ordinary

person understands its proscription and ensures against arbitrary enforcement.

*Sessions v. Dimaya*, 138 S. Ct. at 1212.

From legislative history it is clear that Congress intended to bar certain

classes of people from possessing of a firearm. Yet how to identify this class, and

how one may evaluate their risk of entering this class, remains unanswered. See,

*e.g., Johnson v. U.S.*, 576 U.S. at 598. (finding the residual clause of the Armed

Career Criminal Act void for vagueness and noting the clause "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony"). "Without knowledge of [their criminal] status, [a] defendant may well lack the intent needed to make [their] behavior wrongful." *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019). In *Rehaif*, the Supreme Court held that prosecution under 18 U.S.C. § 922(g) and § 924(a)(2) requires that the government "prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Id*. Scienter requirements, such as the one examined in *Rehaif*, are consistent with the understanding that, underlying criminal law, is the principle of "a vicious will." *Id*. at 2196 (citing 4 William Blackstone, Commentaries on the Laws of England 21 (1769)). Thus, in any case charged under § 922(g)(3) the Government must establish, beyond a reasonable doubt, that the defendant knew they fell within the statute's proscribed class.

The plain language of the statute, congressional history, and judicially created definitions, all fail to provide an individual with notice of their status as an "unlawful user." This exact observation underscores the vagueness problem at the core of § 922(g)(3). Without comprehensible statutory definitions, it is unclear when a person begins, or ends, use of a controlled substance that prohibits possession of firearm. Unless one first knows their status as a prohibited person, they cannot knowingly commit a violation of § 922(g)(3). The constitutional infirmities of § 922(g)(3) are so grave they render the statute unenforceable. The statutory language of § 922(g)(3) is so vague it fails to provide an ordinary person fair

warning about what the law demands of them, including whether they fall within a prohibited status under the statute. It must be found unconstitutionally vague.

**B.     _Judicial attempts to salvage § 922(g)(3) violate the Separation of Powers doctrine_**

In addition to providing fair notice of what is prohibited, to avoid a vagueness challenge, a criminal statute must "not encourage arbitrary or discriminatory enforcement." _Lynch_, 881 F.3d at 818-19. The vagueness "doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." _Sessions v. Dimaya_, 138 S. Ct. at  1212. This means that "Congress, rather than the executive or judicial branch, define what conduct is sanctionable and what is not." _Dimaya_, 138 S. Ct. at 1211.

But judicial efforts to save § 922(g)(3) from its indeterminacy encourage arbitrary enforcement, providing "a paradigmatic example of the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not." _Morales-Lopez_, 2022 WL 2355920, at *10. And allowing the judiciary to determine who stays in the net and who does not, according to judicially created standards rather than a clear statutory directive, also impermissibly gives unfettered discretion to police officers and prosecutors to decide who to capture in the net. _Dimaya_, 138 S. Ct. at 1212.

Courts "openly admit" that they have read a temporal element into § 922(g)(3) to combat its uncertainty. _Morales-Lopez_, 2022 WL 2355920, at *9. In

*Davis*, the Supreme Court rejected the notion of judicial intervention aimed at saving a vague law. *See Davis*, 139 S. Ct. at 2323 ("Only the people's elected representatives in Congress have the power to write new federal criminal laws"). As examined above, both the plain language of the statute, as well as legislative history of § 922(g)(3), fail to provide insight into exactly which class of people Congress intended to exclude from those who may exercise their Second Amendment rights. There is nothing contained within the statute, or history, to support the judicially created definitions of "addicted to" and "unlawful user." Section 922(g)(3) may only be rectified, as it relates to a void for vagueness challenge, through congressional action addressing the statutory deficiencies. Congress' decision not to do so, especially when it has taken steps to clarify similar terms in other contexts, is not an invitation to the courts to abandon judicial restraint. *Davis*, 139 S. Ct. at 2333. Continued attempts to judicially define and salvage § 922(g)(3) are not only futile, but also an unconstitutional violation of the Separation of Powers doctrine and an invitation to arbitrary enforcement by the executive and judicial branches. As such, the statute, as written by Congress, must be stricken as void for vagueness.

## V.    Section 922(g)(3) violates the Commerce Clause

Mr. Davey moves this Court to dismiss Count II of the indictment on grounds that the charging statute, 18 U.S.C. § 922(g)(3), violates the Commerce Clause. Section 922(g)(3) makes it a crime for an unlawful user of controlled substances to "possess . . . affecting commerce, any firearm or ammunition." Under the Tenth

Circuit's current interpretation of "affecting commerce," an unlawful user cannot possess any firearm that so much as crossed state lines "at some point in its existence." *United States v. Patton*, 451 F.3d 615, 634-35 (10th Cir. 2006). Assuming the correctness of this interpretation, Congress exceeded its Commerce Clause powers when it enacted § 922(g)(3).[2]

### A. Introduction

This Court is bound by Tenth Circuit precedent interpreting "affecting commerce" to deny this motion. *See Patton*, 451 F.3d at 634-35. That precedent is based on the Supreme Court's reading of § 922(g)(1)'s predecessor statute in *Scarborough v. United States*, 431 U.S. 563 (1977). *See Patton*, 451 F.3d at 636. But *Scarborough* merely interpreted that statute; it did not consider the statute's constitutionality. *See Alderman v. United States*, 562 U.S. 1163, 131 S.Ct. 700, 701 (2011) ("[n]o party [in Scarborough] alleged that the statute exceeded Congress' authority, and the Court did not hold that the statute was constitutional") (Thomas, J., joined by Scalia, J., dissenting from denial of certiorari). And even if *Scarborough* implicitly decided that § 922(g)(1)'s predecessor statute passed Commerce Clause muster, that decision would be "in fundamental and

---

[2] While the statute includes several commerce-related jurisdictional hooks, the indictment invokes only an "affecting commerce" theory, alleging that the firearm previously crossed state lines. We therefore challenge only the "affecting commerce" element, and ask this Court to invalidate and strike just that element from the statute. *See Barr v. American Association of Political Consultants, Inc.*, 140 S.Ct. 2335, 2350 (2020) (discussing presumption that unconstitutional provision is severable from remaining statute).

irreconcilable conflict" with the Supreme Court's modern Commerce Clause jurisprudence. *United States v. Kuban*, 94 F.3d 971, 977 (5th Cir. 1996) (Demoss, C.J., dissenting in part).

We therefore present this issue for preservation purposes, and in case this Court is inclined to weigh in on the issue in anticipation of further review, as the Tenth Circuit did in *Patton,* and other circuit and district court judges have done more recently. *See, e.g., Patton*, 451 F.3d at 636 (noting that "[l]ike our sister circuits, we see considerable tension between *Scarborough* and the three-category approach adopted by the Supreme Court in its recent Commerce Clause cases," and predicting that "the Supreme Court will revisit this issue in an appropriate case— maybe even this one"); *United States v. Seekins*, 52 F.4th 988, 991-92 (5th Cir. 2022) (Ho, J., *et al.*, dissenting from nine-to-seven vote denying rehearing en banc) (explaining how § 922(g)(1) precedent misreads both *Scarborough* and the Commerce Clause and observing that there is "no better moment" to "restore the proper constitutional balance between our national needs and our commitment to federalism"); *United States v. Storey*, 571 F.Supp.3d 1296, 1298 (M.D. Fla. 2021) (noting that "the minimal nexus test prompts concern" and that "[u]nder the original meaning of the Commerce Clause, § 922(g)(1) may represent 'an incursion into the States' general criminal jurisdiction and an imposition on the People's liberty" (citation omitted); nonetheless concluding that "so long as *Scarborough*'s minimal nexus test remains controlling precedent in this Circuit, this Court is not

at liberty to chart another course"); *But See, United States v. Dix*, 2023 WL 5367508, (10ᵗʰ Cir. Aug.22, 2023).

## B. Argument

The Supreme Court has never "declared that Congress may use a relatively trivial impact on commerce as an excuse for broad general regulation of state or private activities." *United States v. Lopez*, 514 U.S. 549, 558 (1995) (citation omitted). And yet the Tenth Circuit nonetheless adheres to the broad view "that Congress may regulate any firearm that has ever traversed state lines." *Patton*, 451 F.3d at 634. This view cannot hold. The Commerce Clause does not authorize Congress to adopt a criminal law with such a minimal nexus to commerce. Congress may only rely on the Commerce Clause to regulate activities occurring outside of interstate commerce if it has a rational basis for concluding that the regulated activity "*substantially* affects" interstate commerce. *Lopez*, 514 U.S. at 558, 559 (emphasis added); *Gonzales v. Raich*, 545 U.S. 1, 22 (2005).

For five reasons, § 922(g)(3)'s "affecting commerce" element, as currently interpreted, does not pass Commerce Clause muster.

First, neither being an unlawful user of controlled substances nor merely possessing a firearm has anything to do with commerce. *See Lopez*, (Gun Free School Zones Act had "nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms"); *Patton*, 451 F.3d at 621 ("We can think of no reason that mere possession of body armor by a felon would be

deemed commercial when the mere possession of a firearm near a school was not."). This factor alone weighs strongly against a finding that § 922(g)(3)'s targeted activity substantially affects commerce.

Second, § 922(g)(3)'s "affecting commerce" element does not on its face or as interpreted require a finding that the firearm possession at issue *substantially* affected commerce. This element thus "does not seriously limit the reach of the statute." *Patton*, 451 F.3d at 633. By requiring only that the firearm itself at some point in time passed through interstate commerce, this element does nothing to ensure, "through case-by-case inquiry, that the firearm *possession* in question affects interstate commerce." *Lopez*, 514 U.S. at 562 (emphasis added).

Third, congressional findings cannot save § 922(g)(3). When Congress first added unlawful-user-in-possession provisions in 1968, its purpose was not to track firearms in commerce, but to control crime. The available 1968 legislative history is replete with statements from legislators as well as the public that the American people wanted "deadly firearms of all kinds kept out of the hands of criminals, addicts, mental incompetents, thrillseeking juveniles, and others who should not have them." 1968 Cong. Rec. 13620 (statement of Senator Edward Kennedy). Senator Kennedy urged Congress to "make this Nation a little safer today, to help keep guns out of the hands of those who should not have them." *Id*. at 13621; *accord id*. at 14188 (statement from National Association of Counties in wake of President Kennedy's assassination, quoting Senator Edward Kennedy: "It is indeed amazing . . . that we continue to tolerate a system of laws which makes it ridiculously easy for

any criminal, madman, drug addict, or child to obtain lethal firearms which can be used to rain violence and death on innocent people."). This "costs of crime" justification is insufficient to sustain a criminal statute under the Commerce Clause. *Lopez*, 514 U.S. at 563–64 (rejecting government's "costs of crime" reasoning); *United States v. Morrison*, 529 U.S. 598, 617 (2000 ("We . . . reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce.").

Fourth, banning unlawful users from possessing firearms "affecting commerce" (as currently interpreted) is not essential either to the Controlled Substances Act or to federal firearms regulations such that this particular ban's omission from the federal law would have left "a gaping hole" in either effort. *Raich*, 545 U.S. at 22, 24. In *Raich*, the Supreme Court held that "Congress had a rational basis for believing that failure to regulate the intrastate manufacture and possession of marijuana would leave a gaping hole" in the Controlled Substances Act, which was designed to exclude Schedule I drugs *entirely* from the market. *Id*. at 22. Since the CSA already regulates possession of controlled substances and excludes Schedule I drugs from the market, Congress could not rationally have believed that prohibiting users of such substances from possessing firearms was likewise necessary. And federal firearms regulations are not aimed at prohibiting entirely the possession of firearms. *See Raich*, 545 U.S. at 24-25 (distinguishing individual firearms statute invalidated in *Lopez* from statutory scheme challenged in *Raich*); *Lopez*, 514 U.S. at 561 ("Section 922(q) is not an essential part of a larger

regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated."). Nor could they be. Unlike the CSA offenses challenged in *Raich*, the unlawful-user-in-possession ban depends on a status element that "makes the difference" between *constitutionally protected* innocent conduct and criminal conduct. *Rehaif v. United States*, 139 S.Ct. at 2197; *see also Storey*, 571 F.Supp.3d at 1298 ("federal courts must remain vigilant to ensure Congress does not exceed its limited powers by curtailing the enumerated liberties of the People").

The Supreme Court has not previously considered the Commerce Clause implications of such a statute. But it is instructive that Congress did not find it necessary to adopt any status-based possession crimes in its first foray into nationwide gun-control legislation. The National Firearms Act of 1934 created tax and registration duties with respect to the manufacture, sale, importation, and possession of certain firearms, and made noncompliance with those duties a crime, but did not ban any category of persons from possessing firearms. 73 Cong. Ch. 757 (June 26, 1934). *Id*. In a more recent iteration of the 1968 status-based bans, Congress emphasized its intent not to unduly burden "law-abiding citizens with respect to the acquisition, possession, or use of firearms" for lawful purposes. PL 99-308 Sec. 1 (May 19, 1986). This unique tension between the creation of status-based firearms offenses and concern for Second Amendment firearms rights weighs against a finding that Congress ever rationally believed that a ban on unlawful

users possessing firearms "affecting commerce" was *essential* to its other efforts to regulate and track firearms.

Fifth, as the Supreme Court warned in *Lopez* with respect to the Gun Free School Zones Act, upholding the unlawful-user-in-possession ban on grounds that the possession "affects commerce" as currently interpreted would justify Congress regulating "not only all violent crime, but all activities that might lead to violent crime, regardless of how tenuously they relate to interstate commerce." 514 U.S. at 563-64. Dictating who may possess firearms is an area "where States historically have been sovereign." *Id.* at 564. Congress exceeded its Commerce Clause power and exercised a traditional state function when it enacted § 922(g)(3).

## VI.   Conclusion

Wherefore, Mr. Davey asks this Court to dismiss Count II of the indictment against him based on a finding that 18 U.S.C. § 922(g)(3) violates his constitutional rights as protected by the Second and the Fifth Amendments, that Congress has exceeded its authority under the Commerce Clause, or that he does not qualify legally qualify as an "unlawful user."

Respectfully submitted,

s/Tim Burdick
TIM BURDICK, #78152
Assistant Federal Public Defender
500 State Avenue, Suite 201
Kansas City, Kansas 66101
Telephone: (913) 551-6712
Fax: (913) 551-6562
Email: Tim_Burdick@fd.org
Attorney for Kyle Davey

## CERTIFICATE OF SERVICE

I certify that on August 24, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all interested parties.

s/Tim Burdick
Tim Burdick, #78152