IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA,  Plaintiff,  v.  KYLE DAVEY (01),  Defendant. | Case No. 23-20006-01-DDC |

### MEMORANDUM AND ORDER

The United States has charged defendant Kyle Davey with two firearms offenses. Mr. Davey has filed a Motion to Dismiss (Doc. 17) one of those charges: possession of a firearm by an unlawful user of a controlled substance, violating 18 U.S.C. § 922(g)(3). For reasons explained below, the court denies the motion. The court begins its explanation with the relevant background.

I.  Background

In January 2021, law enforcement officers executed a search warrant at a home in Shawnee, Kansas. Doc. 17 at 2. Officers found several stolen items, five grams of methamphetamine, and 45 firearms. *Id.* at 2–3. They arrested Mr. Davey at the scene. *Id.* at 3. When they searched Mr. Davey, officers found roughly two grams of heroin. *Id.* Mr. Davey admitted to using heroin daily. *Id.*

The United States has filed a two-count Indictment against Mr. Davey:

- Count 1: Illegal possession of a machinegun, violating 18 U.S.C. § 922(o),

- Count 2:  Possession of a firearm by an unlawful user of a controlled substance, violating 18 U.S.C. § 922(g)(3).

Doc. 1 at 1–2.

Mr. Davey has filed a Motion to Dismiss Count 2 (Doc. 17).  This count charges Mr. Davey with violating § 922(g)(3), which makes it illegal for any person "who is an unlawful user of or addicted to any controlled substance . . . to . . . possess . . . any firearm."  18 U.S.C. § 922(g)(3).  Mr. Davey argues that the court should dismiss this charge for four reasons.  *First*, he moves for dismissal based on the Supreme Court's recent ruling in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).  *Second*, Mr. Davey argues that he doesn't qualify as an "unlawful user" under § 922(g)(3).  *Third*, Mr. Davey asserts that, if the court concludes that he is an unlawful user, then § 922(g)(3) is unconstitutionally vague.  *Last*, Mr. Davey argues that § 922(g)(3) violates the Constitution's Commerce Clause.

The court considers each argument, in turn, below.

## II.     *Bruen* Challenge

The court begins with Mr. Davey's argument that § 922(g)(3) violates the Second Amendment, based on *Bruen*.  Mr. Davey's *Bruen*-based challenge is a facial challenge.  The court explains what a facial challenge is, below.  Then it describes *Bruen*'s new test for courts to apply when determining whether gun laws violate the Second Amendment.

A party "may challenge the constitutionality of a statute by asserting a facial challenge, an as-applied challenge, or both."  *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011).  "An as-applied challenge requires only that the law is unconstitutional as applied to the challenger's case[.]"  *United States v. Streett*, 434 F. Supp. 3d 1125, 1171–72 (D.N.M. 2020).  An "as-applied challenge concedes that the statute may be constitutional in many of its

applications, but contends that it is not so under the *particular circumstances* of the case" at hand. *Carel*, 668 F.3d at 1217 (citation, internal quotation marks, and brackets omitted).

In contrast, a "facial challenge is a head-on attack of a legislative judgment, an assertion that the challenged statute violates the Constitution in all, or virtually all, of its applications." *Id.* (citation, internal quotation marks, and brackets omitted). A "facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). A "facial challenge must fail where the statute has a plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citation and internal quotation marks omitted).

The Supreme Court has noted that "[f]acial challenges are disfavored." *Id.* at 450. Relevant here, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (citations and internal quotation marks omitted). The Court also has warned that "facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.* at 451. And, on a facial challenge, the court must heed the Supreme Court's directive to "keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* (citation, internal quotation marks, and brackets omitted).

Mr. Davey's facial challenge to § 922(g)(3) comes in the wake of the Supreme Court's decision in *Bruen*. *Bruen* "created a new test for the scope of the right to possess firearms."

*Vincent v. Garland*, 80 F.4th 1197, 1199 (10th Cir. 2023) (citing *Bruen*, 597 U.S. at 24). Courts and commentators have spilled much ink about *Bruen*, its new test, and the Court's Second Amendment jurisprudence. The court declines to add to this commentary and, instead, goes straight to applying *Bruen*'s test.

Our Circuit has described the *Bruen* test this way: "1. Does the Second Amendment's plain text cover an individual's conduct? 2. If the answer is *yes*, has the government justified the ban by showing that it's consistent with the nation's 'historic tradition of firearm regulation?'" *Vincent*, 80 F.4th at 1200 (quoting *Bruen*, 597 U.S. at 24). *Bruen* itself involved a federal firearms licensing law; it didn't address § 922(g)(3) and other statutes that resemble § 922(g)(3), including § 922(g)(1)'s prohibition against felons possessing firearms. Courts applying *Bruen* to these statutes have reached a variety of results.

Our Circuit hasn't addressed the constitutionality of § 922(g)(3) post-*Bruen*. District courts within our Circuit have split.[1] Notably, the decision within our Circuit that found § 922(g)(3) unconstitutional was an as-applied challenge. *United States v. Harrison*, 654 F. Supp. 3d 1191, 1199 (W.D. Okla. 2023). Similarly, the Fifth Circuit found § 922(g)(3) unconstitutional in an as-applied challenge. *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023). All are thoughtful opinions that reasonably apply a ponderous test. Ultimately, the court agrees with the courts that have concluded § 922(g)(3) doesn't violate the Second Amendment. The court explains this conclusion, below, starting with *Bruen*'s step one.

---

[1] *United States v. Clements*, No. 23-cr-01389-MIS, 2024 WL 129071, at *4–7 (D.N.M. Jan. 11, 2024) (constitutional); *United States v. Espinoza-Melgar*, No. 21-cr-204-DAK, 2023 WL 5279654 (D. Utah Aug. 16, 2023) (constitutional); *United States v. Harrison*, 654 F. Supp. 3d 1191 (W.D. Okla. 2023) (Wyrick, J.) (unconstitutional); *United States v. Lewis*, 650 F. Supp. 3d 1235, 1237–43 (W.D. Okla. 2023) (Friot, J.) (constitutional). The court is mindful that the government has appealed the decision holding § 922(g)(3) unconstitutional and the Circuit has abated that appeal pending the Supreme Court's decision in *United States v. Rahimi*. Order, *United States v. Harrison*, No. 23-6028 (10th Cir. Dec. 11, 2023). This court, however, can't stay Mr. Davey's case while it waits for clarity from the Supreme Court.

A.      **Second Amendment Applies to Mr. Davey's Conduct**

At *Bruen* step one, the court asks whether the Second Amendment's text applies to Mr. Davey.  The Second Amendment reads, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  Though the Second Amendment refers to "the people," the government argues that the Second Amendment extends only "to 'law abiding, responsible citizens,'"—and Mr. Davey, as a drug user, doesn't qualify as such.  Doc. 24 at 7 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).  The government points out that in *Heller* and *Bruen*, the Court repeatedly "described the Second Amendment right as extending only to 'law-abiding, responsible citizens[.]'" *Id.* (first citing *Heller*, 554 U.S. at 635, then citing *Bruen*, 597 U.S. at 70).  So, the government argues, Mr. Davey's motion fails at step one because he isn't part of "the people."

Though district courts have split on § 922(g)(3)'s constitutionality, they agree on *Bruen* step one, holding "the people" includes all Americans—even drug users.  *Harrison*, 654 F. Supp. 3d at 1197–98 (citing *Heller*, 554 U.S. at 581); *see also United States v. Espinoza-Melgar*, No. 21-cr-204-DAK, 2023 WL 5279654, at *2–3 (D. Utah Aug. 16, 2023).  The court agrees and rejects the government's argument that the Second Amendment applies only to law abiding citizens.  As Judge Kimball explained in *Espinoza-Melgar*,

> First, there is no reason to think that "the people,["] as used in the Second Amendment, bears a different definition than "the people" as used in other constitutional provisions.  Seven constitutional provisions refer to "the people": the preamble, Article I § 2, and the First, Second, Fourth, Ninth, Tenth, and Seventeenth Amendments.  The *Heller* Court noted that, in the Second Amendment and in the other six uses (ignoring the Seventeenth Amendment's use), "the term unambiguously refers to all members of the political community, not an unspecified subset." 554 U.S. at 580.  And the Seventeenth Amendment's use of "the people," which requires United States Senators to be elected by "the people" of each State, implies no additionally restrictive definition.  If "the people" includes only law-abiding citizens, then those who violate the law could plausibly lose the right not

> only to possess firearms, but also to peaceably assemble and to be free from unreasonable searches and seizures. The court finds that argument to be untenable.
>
> Regarding the United States' argument that *Bruen* and its concurring opinions define the Second Amendment as applying to "law-abiding citizens" at least twenty-one times, the court notes that the petitioners in *Bruen* were "law-abiding . . . citizens." 142 S. Ct. at 2124–25. Thus, while *Bruen* clearly establishes that being a law-abiding citizen is sufficient to be included in "the people" to whom the Second Amendment right is endowed, any indication in *Bruen* that being a law-abiding citizen is necessary to be included in "the people" is dicta. *See Range v. Att'y General*, 69 F.4th 96,101 (3d Cir. 2023) (en banc) (finding that "the criminal histories of the plaintiffs in *Heller*, *McDonald*, and *Bruen* were not at issue in those cases. So, their references to 'law-abiding, responsible citizens' were dicta.").
>
> Finally, limiting the right granted by the Second Amendment to apply only to law-abiding citizens would raise a host of questions regarding who qualifies as a "law-abiding" citizen. If an otherwise law-abiding person with a concealed firearm is pulled over for speeding or running a stop sign, would their firearm possession still be protected by the Second Amendment? Would the Second Amendment protect an adult who owned a firearm if that individual had been convicted of a misdemeanor as a child? Fortunately, these are questions that the court need not answer. The court concludes that [defendant] is among the people protected by the Second Amendment, joining the many district courts within the Tenth Circuit that have reached the same conclusion.

2023 WL 5279654, at *3 (parallel citation omitted) (collecting cases). The court agrees with Judge Kimball's analysis and thus adopts it here. The court holds that Mr. Davey "is among 'the people' protected by the Second Amendment[.]" *Id.* (collecting cases).

The court also concludes that § 922(g)(3) regulates Second Amendment conduct. *Id.* So, "the plain text of the Second Amendment applies to [Mr. Davey's] alleged conduct . . . and the Constitution presumptively protects that conduct." *United States v. Clements*, No. 5:23-cr-01389-MIS, 2024 WL 129071, at *5 (D.N.M. Jan. 11, 2024). With *Bruen* step one decided, the court turns next to step two.

     **B.**     **History and Tradition of Firearms Regulations Supports Disarming Dangerous People, Like Drug Users**

The heavy lifting occurs at *Bruen*'s step two. It "requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical

6

understanding." *Bruen*, 597 U.S. at 26.  "This inquiry is demanding and subject to differing interpretations." *Vincent*, 80 F.4th at 1203 (Bacharach, J., concurring).  "In determining whether historical analogues exist, [courts] consider English views dating from the late seventeenth century, the Founders' views in the run-up to adoption of the Second Amendment, and the interpretation of the Second Amendment from its ratification through the end of the nineteenth century." *Id.* (Bacharach, J., concurring) (citing *Bruen*, 597 U.S. at 20).

*Bruen* contemplates a "fairly straightforward" inquiry in some cases:

> For instance, when a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment.  Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional.  And if some jurisdictions actually attempted to enact analogous regulations during this timeframe, but those proposals were rejected on constitutional grounds, that rejection surely would provide some probative evidence of unconstitutionality.

597 U.S. at 26–27.

*Bruen* acknowledged that modern legislatures face new problems.  For "cases implicating unprecedent societal concerns or dramatic technological changes," *Bruen* contemplates "a more nuanced approach." *Id.* at 27.  Specifically, *Bruen* prescribes "reasoning by analogy" for statutes addressing challenges that didn't exist at the Founding. *Id.* at 28.  "[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*." *Id.* at 30 (emphases in original).  But *Bruen* cautions that "courts should not uphold every modern law that remotely resembles a historical analogue, because doing so risks endorsing outliers that our ancestors would never have accepted." *Id.* (citation, internal quotation marks, and brackets omitted).  "To determine whether a modern regulation has an historical analogue, courts should compare '*how* and *why* the regulations

7

burden a law-abiding citizen's right to armed self-defense.'" *Espinoza-Melgar*, 2023 WL 5279654, at *4 (quoting *Bruen*, 597 U.S. at 29).

That is why the court must decide whether possession of firearms by those addicted to controlled substances qualifies as "a general societal problem that has persisted since the 18th century[.]" *Bruen*, 597 U.S. at 26. If so, the government must identify a *distinctly* similar historical regulation. *Id.* If not, the government must identify a *relevantly* similar historical regulation. *Id.* at 28–29; *see also United States v. Lewis*, 650 F. Supp. 3d 1235, 1239 (W.D. Okla. 2023) ("Although the *Bruen* majority opinion is not unmistakably clear on this point, the court concludes, upon careful reading of that opinion, that it does articulate two standards for assessment of the government's proffered historical analogues[.]").

Drug use, to be sure, isn't new. Nonetheless, as Judge David Briones concluded in *United States v. Gil*, "the public perception and policy response to drug use 'dramatically changed' in the twentieth century[.]" EP-22-CR-773-DB, 2023 WL 4356067, at *5 (W.D. Tex. July 5, 2023) (citing David T. Courtwright, *A Century of American Narcotic Policy* 1 (Institute of Medicine, 1992). The court agrees with Judge Briones's conclusion that the government must show a "'relevantly similar'" historical analogue rather than a "distinctly similar" historical analogue. *Id.* (citing *Bruen*, 597 U.S. at 29). The court finds Judge Briones's reasoning persuasive and adopts it here. *See id.* at *5 n.4. Having identified the pertinent legal standard, the court now evaluates the government's historical analogues.

In a nutshell, the government relies on dangerousness and historical laws that keep guns away from dangerous people. The government argues that "Section 922(g)(3) is consistent with the Second Amendment because: (1) this Nation's historical tradition of firearms regulation supports disarming those who are believed to be dangerous if they possessed a firearm, and (2)

8

those who unlawfully use controlled substances are such a category of people." Doc. 24 at 12. The government cites the following historical authorities: the Militia Act of 1662, the English Bill of Rights, a statute disarming Catholics unless they swore an oath, and a statute disarming Scotland. *Id.* at 12–14. The government also cites the statutes of several colonies and states; statutes that disarmed groups the relevant legislature deemed dangerous. *Id.* at 15–17.

The court concludes that the government has shown that our Nation has a tradition of disarming dangerous people. Indeed, there "is no doubt that 'the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous.'" *Espinoza-Melgar*, 2023 WL 5279654, at *5 (quoting *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012)). "Legislatures historically prohibited possession by categories of persons based on a conclusion that the category as a whole presented an unacceptable risk of danger if armed." *United States v. Jackson*, 69 F.4th 495, 504 (8th Cir. 2023) (upholding felon in possession statute, § 922(g)(1), in face of *Bruen* challenge); *see also Kanter v. Barr*, 919 F.3d 437, 458 (7th Cir. 2019) ("In sum, founding-era legislature categorically disarmed groups whom they judged to be a threat to the public safety.") (Barrett, J., dissenting). In *United States v. Brown*, Judge Jill N. Parrish, addressing a *Bruen* challenge to a statute banning firearm possession by domestic violence offenders, provided a thorough historical analysis. No. 22-cr-00239-JNP-CMR, 2023 WL 4826846, at *9–11 (D. Utah July 27, 2023). Judge Parrish identified several historical restrictions that disarmed groups based on their "dangerousness." They included: the Militia Act of 1662 and early American colonial and state statutes that disarmed dangerous groups. *Id.* Though Judge Parrish evaluated a different law, the analogues apply equally to this case and § 922(g)(3). *See Espinoza-Melgar*, 2023 WL 5279654, at *5

9

(adopting *Brown*'s historical analysis in § 922(g)(3) context).  The court thus adopts Judge Parrish's careful historical analysis in *Brown*.  2023 WL 482846, at *9–11.

Given this historical traditional of disarming dangerous people, the court concludes that § 922(g)(3) is consistent with this tradition.  The "historical restrictions and Section 922(g)(3) comparably burden the Second Amendment right by categorically prohibiting certain persons from possessing firearms, and comparably justify the regulation as promoting public safety by keeping guns out of the hands of presumptively dangerous people, namely, felons, intoxicated persons, and the mentally ill."  *Clements*, 2024 WL 129071, at *5.  The court also finds the Seventh Circuit's opinion in *United States v. Yancey* persuasive on this issue.  621 F.3d 681 (7th Cir. 2010); *see also Clements*, 2024 WL 129071, at *6 (finding *Yancey* persuasive in *Bruen* challenge to § 922(g)(3)).  There, the Seventh Circuit addressed a challenge[2] to § 922(g)(3), concluding that "[k]eeping guns away from habitual drug abusers is analogous to disarming felons."  *Yancey*, 621 F.3d at 684.  The Seventh Circuit explained that "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms."  *Id.* at 685.  The Seventh Circuit also noted that the Supreme Court explicitly "endorsed the exclusion of the mentally ill from firearm possession as presumptively valid."  *Id.* (first citing *McDonald v. City of Chicago*, 561 U.S. 742, 788–89 (2010); then citing *Heller*, 554 U.S. at 626–27 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]")).

---

[2]     *Yancey*, of course, predates *Bruen*.  But it's nonetheless persuasive because it applied a historical test based on the Supreme Court's opinions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010).

The court thus "joins the overwhelming majority of courts" that have upheld § 922(g)(3) in the face of *Bruen* challenges. *Clements*, 2024 WL 129071, at *6 (collecting cases). Mr. Davey's facial challenge necessarily fails because § 922(g)(3) "has a plainly legitimate sweep." *Wash. State Grange*, 552 U.S. at 449. In reaching this conclusion, the court heeds the Supreme Court's directive to "keep in mind that a ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Id.* at 450 (citation, internal quotation marks, and brackets omitted). The court declines to question the wisdom of Congress's decision to disarm unlawful users of and addicts to controlled substances.

### III.    Unlawful User

Mr. Davey's next argument argues that, as a matter of law, he doesn't qualify as an unlawful user within the meaning of § 922(g)(3). This challenge relies on a statutory interpretation argument. Recall that § 922(g)(3) makes it "unlawful for any person . . . who is an unlawful user of or addicted to any controlled substance . . . [to] possess in or affecting commerce any firearm . . . ; or to receive any firearm . . . which has been shipped or transported in interstate or foreign commerce." Section 922(g)(3) never defines "unlawful user." And Mr. Davey asserts that no federal or Kansas law makes it unlawful to use drugs, so the government can't charge him as an "unlawful user." Indeed, federal law makes it unlawful "(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance."[3] 21 U.S.C. § 841(a). But federal law never

---

[3]    Nowhere else do the federal statutes render it unlawful to use a controlled substance. *See* 21 U.S.C. § 842(a) (making it unlawful for people registered to distribute or dispense controlled substances for a legitimate business to distribute or dispense controlled substances outside that legitimate purpose); 21 U.S.C. § 844(a) (making it unlawful "to possess a controlled substance unless such substance was obtained directly, or pursuant to a valid prescription or order, from a practitioner").

11

weighs in on "use" or "using" controlled substances. Likewise, it's not illegal to use a controlled substance under Kansas law. *See* Kan. Stat. Ann. § 21-5705 (making it unlawful to distribute, possess with intent to distribute, or cultivate a controlled substance); Kan. Stat. Ann. § 21-5706 (making it unlawful to possess controlled substances).

So, Mr. Davey argues, he can't qualify as an "unlawful user" in possession of a firearm. To hold otherwise, in Mr. Davey's view, would turn the word "unlawful" in § 922(g)(3) into surplusage and broaden the offense beyond Congress's definition. Doc. 17 at 10–11.

The court rejects Mr. Davey's argument. Federal law makes it illegal to "possess" a controlled substance. 21 U.S.C. § 841(a)(1). So does Kansas law. Kan. Stat. Ann. § 21-5706. The court just doesn't see how an individual could use a controlled substance without possessing it. Our Circuit has reached the same conclusion in the supervised release context. The relevant supervised release statute requires courts to terminate a term of supervised release if "the defendant . . . possess a controlled substance[.]" 18 U.S.C. § 3583(g). In *United States v. Rockwell*, our Circuit concluded that evidence of the defendant's drug use qualified as drug possession under the supervised release statute. 984 F.2d 1112, 1114 (10th Cir. 1993), *overruled on other grounds by Johnson v. United States*, 529 U.S. 694, 698 n.2 (2000). As the Circuit explained: "There can be no more intimate form of possession than use." *Id.* Since *Rockwell*, our Circuit has continued to hold "'that a person cannot use a drug without possessing it.'" *United States v. Hammonds*, 370 F.3d 1032, 1035 (10th Cir. 2004) (quoting *United States v. McAfee*, 998 F.2d 835, 837 (10th Cir. 1993)); *see also United States v. Rodriguez*, 945 F.3d 1245, 1251 (10th Cir. 2019) ("Federal law leaves no room for doubt that the knowing use of a controlled substance supports a charge for possession."). The court applies this reasoning to § 922(g)(3).

12

Mr. Davey argues that use and possession aren't synonymous. Doc. 27 at 24. They're not synonymous, but possession *precedes* use. To be sure, a person can possess controlled substances without using them. A person can't use controlled substances without possessing them, however.

Here, Mr. Davey admitted to using heroin. He thus qualifies as an unlawful user under § 922(g)(3). The court now addresses Mr. Davey's argument that § 922(g)(3) is unconstitutionally vague because of its failure to define unlawful user.

**IV.     Vagueness**

Mr. Davey brings a facial vagueness challenge to § 922(g)(3). He argues that it violates his Fifth Amendment right to due process because the statute is too vague; it "fails to define what it means to be an addict, or one who unlawfully uses a controlled substance[.]" Doc. 17 at 11. The court notes that Mr. Davey's motion relies heavily on *United States v. Morales-Lopez*, No. 2:20-cr-00027-JNP, 2022 WL 2355920 (D. Utah June 30, 2022). In *Morales-Lopez*, Judge Parrish held § 922(g)(3) unconstitutionally vague in a facial challenge. *Id.* at *12. That case now is before the Tenth Circuit, and the parties submitted the case to the panel on September 19, 2023. *United States v. Moraels-Lopez*, No. 22-4074 (10th Cir.).

Vagueness challenges are rooted in the Fifth Amendment's Due Process Clause. Under the Fifth Amendment, the government can't deprive a person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The "Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).

Vagueness challenges come in two forms: facial and as-applied. Generally, a facial challenge asserts "no application of the statute would be constitutional[.]" *Sabri v. United*

13

*States*, 541 U.S. 600, 609 (2004).  In other words, as already mentioned, "a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' *i.e.*, that the law is unconstitutional in all of its applications."  *Wash. State Grange*, 552 U.S. at 449  (quoting *Salerno*, 481 U.S. at 745).  In contrast, an "as-applied" challenge acknowledges a statute can be applied in a constitutional manner in some cases.  But this challenger asserts that the statute's application to the challenging party's particular circumstances is unconstitutional.  *Carel*, 668 F.3d at 1217 (citations omitted); *N.M. Youth Organized v. Herrera*, 611 F.3d 669, 677 n.5 (10th Cir. 2010) ("The 'as-applied' challenge acknowledges that the law may have some potential constitutionally permissible applications, but argues that the law is not constitutional as applied to [him].").

Regardless of whether a vagueness challenge is facial or as-applied, "'[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand'" and "'[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'"  *Saffo*, 227 F.3d at 1270 (quoting *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 n.7 (1982)).  "A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law."  *Vill. of Hoffman Estates*, 455 U.S. at 495.  In other words, a facial challenger must first show that the statute is unconstitutional as applied to his circumstances.

Mr. Davey purports to make a facial challenge.  Doc. 17 at 12–13.  And he argues he doesn't need to bring an as-applied challenge.  Mr. Davey argues that, under the Supreme Court's precedent in *Johnson v. United States*, *Sessions v. Dimaya*, and *United States v. Davis*, he doesn't have to show the statute is vague as applied to his circumstances.  Doc. 27 at 24.  The

14

court disagrees with him. It explains why, below, beginning with an overview of these three cases.

In *Johnson v. United States*, the Supreme Court considered whether the Armed Career Criminal Act (ACCA)—by imposing a more severe punishment for defendants with "three or more previous convictions for a 'violent felony'"—survived "the Constitution's prohibition of vague criminal laws." 576 U.S. 591, 593 (2015). Under the ACCA's "residual clause," a "violent felony" included "any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Id.* (quoting 18 U.S.C. § 924(e)(2)(B)). Courts applied a "categorical approach" to the "residual clause" when deciding whether a prior offense was a "violent felony" instead of considering the facts of the defendant's actual offense. *Id.* at 596. In practice, the "categorical approach" heavily relied on the judge's determination of whether a prior crime *could* involve a risk of force, or "too much risk of physical injury." *Id.* Stated another way, the standard required courts to apply the "violent felony" standard to "an idealized ordinary case of the crime." *Id.* at 604. Critically, for current purposes, the Supreme Court didn't first require the challenged statute to survive an as-applied challenge. *Id.* at 603. The Court noted, "our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Id.* at 602 (emphasis omitted). The Court held that "imposing an increased sentence under the residual clause of the [ACCA] violates the Constitution's guarantee of due process." *Id.* at 606.

Similarly, in *Sessions v. Dimaya*, the Supreme Court addressed a residual clause in the Immigration and Nationality Act (INA). 138 S. Ct. 1204, 1211 (2018). The INA "renders deportable any alien convicted of an 'aggravated felony' after entering the United States." *Id.* at 1210 (quoting 8 U.S.C. § 1227(a)(2)(A)(iii)). The INA defined "aggravated felony" with a long

15

list, including "a crime of violence" as defined in 18 U.S.C. § 16. *Id.* at 1211. The "crime of violence" definition in 18 U.S.C. § 16 had a residual clause. *Id.* Like the ACCA, the INA's residual clause required courts to utilize the categorical approach to determine whether a crime qualified as a "crime of violence." *Id.* The Court, citing *Johnson*, held the residual clause unconstitutionally vague. *Id.* at 1213. And, critically, the Court didn't address whether the INA's residual clause was unconstitutionally vague as applied to the person challenging it.

In *United States v. Davis*, the Supreme Court affirmed its reasoning in *Johnson* and held a similar residual clause, 18 U.S.C. § 924(c)(3)(B), unconstitutionally vague. 139 S. Ct. 2319, 2325–27, 2333, 2336 (2019). Section 924(c) "authorizes heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.'" *Id.* at 2324 (quoting 18 U.S.C. § 924(c)(1)(A)). The statute defined "crime of violence" in two clauses, one of which was a residual clause. *Id.* And, like the statutes at issue in *Johnson* and *Dimaya*, courts used "exactly the same categorical approach" to determine what qualifies as a crime of violence. *Id.* at 2326. Again, the Court held the statute unconstitutionally vague without considering whether the statute was vague as applied to the particular defendant's conduct.

The court already has declined to apply *Johnson* outside the context of the ACCA. *United States v. Crow*, No. 19-20057-01-DDC, 2020 WL 4335004 (D. Kan. July 28, 2020); *United States v. Bell*, No. 16-40080-01-DDC, 2017 WL 1479376 (D. Kan. Apr. 25, 2017). Other courts in this district have done the same. *United States v. Phommaseng*, No. 15-20006-JAR, 2015 WL 5937595, at *15 (D. Kan. Oct. 12, 2015).

Here, the court reaffirms these earlier holdings and declines to extend *Johnson*, *Dimaya*, and *Davis* beyond the context of a residual clause that requires courts to use a categorical approach.  And the court again is persuaded by Judge Kimball's reasoning in *Espinoza-Melgar*:

> To conclude that an unconstitutionally vague statute need not be vague in all its applications does not necessarily mean that any defendant can facially challenge the statute.  The former proposition answers *whether* a defendant can successfully show that a statute is unconstitutionally vague on its face; the latter proposition answers *which* defendants can lodge facial challenges.  Discussing *Johnson* in his dissent in *Dimaya*, Justice Thomas wrote that "[w]hile *Johnson* weakened the principle that a facial challenge requires a statute to be vague in all applications . . . it did not address whether a statute must be vague as applied to the person challenging it."  *Dimaya*, 138 S. Ct. at 1250 (Thomas, J., dissenting) (internal citations omitted).  Nor did *Johnson* acknowledge—let alone purport to undermine—the plethora of Supreme Court jurisprudence that holds that a defendant "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982); *accord Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").  *Johnson* stands only for the proposition that a defendant can successfully show that a statute is unconstitutionally vague even if they cannot show that the statute is vague in all applications; in other words, *Johnson* lowers a defendant's burden to successfully show that a statute is unconstitutionally vague.  But *Johnson* does not upend the Supreme Court's precedents defining which defendants can make this now-lowered showing.
>
> The court recognizes that *Johnson* and *Hoffman Estates* appear to present a paradox.  *Johnson* holds that if a statute can be unconstitutionally vague despite having some non-vague applications, then surely there are some defendants to whom a statute is clear as applied—yet the statute is nevertheless unconstitutionally vague on its face.  But *Hoffman Estates* prohibits those defendants from challenging the statute for being unconstitutionally vague, and *Johnson* does not imply—let alone state—that its holding abrogates *Hoffman Estates*' long-held rule.
>
> First, this court notes that it is the Supreme Court's "prerogative alone to overrule one of its precedents[.]"  *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).  So, until the Supreme Court holds otherwise, *Hoffman Estates* continues to bind this court.  And moreover, the apparent inconsistency between *Johnson* and *Hoffman Estates* can be resolved by returning to the underlying rationale of the void-for-vagueness doctrine.  The doctrine applies when a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *United States v. Williams*, 553 U.S. 285, 304 (2008).  And "[w]hen the challenged statute clearly proscribes a defendant's conduct, neither of these rationales is implicated.  It would

17

> untether the vagueness doctrine from its moorings to permit a facial vagueness challenge in such a case." *See United States v. Hasson*, 26 F.4th 610, 619 (4th Cir. 2022).  This court finds that *Johnson* did not untether the vagueness doctrine from its moorings.
>
> Moreover, there is another explanation regarding why the *Johnson* Court did not determine whether the residual clause was vague as applied to Johnson's conduct—and this explanation is simpler than [defendant's] explanation (which requires finding that *Johnson* implicitly overruled *Hoffman Estates*).  Because of the unique nature of the residual clause's categorical approach . . . the Supreme Court was foreclosed from assessing whether the residual clause was vague as applied to Johnson's conduct.  Instead, the categorical approach required the Court to instead assess only the "ordinary case" of Johnson's alleged criminal activity.  Because of the categorical approach, it would have been meaningless and inappropriate for the Supreme Court to inquire into whether the residual clause was unconstitutionally vague as applied to Johnson's real-world conduct.  Thus, even if this court were to conclude that the *Johnson* Court decided that any defendant (including one whose conduct was clearly proscribed) can facially challenge a statute for vagueness, such a decision was irrelevant to the *Johnson* holding and is therefore dicta.

2023 WL 5279654, at *13 (parallel citations omitted).

In sum, to succeed on his vagueness challenge, Mr. Davey must show that § 922(g)(3) is unconstitutionally vague as applied to him.  He hasn't made that showing.  Indeed, his motion explicitly presents a facial challenge.  Section 922(g)(3) applies to "an unlawful user of . . . any controlled substance."  18 U.S.C. § 922(g)(3).  Heroin is a controlled substance.  21 C.F.R. § 1308.11(c)(11).  And Mr. Davey has admitted to using heroin on a daily basis.  Doc. 17 at 13.  The court thus rejects the vagueness argument in Mr. Davey's Motion to Dismiss.

V.    **Commerce Clause**

Mr. Davey's final argument for dismissal contends that § 922(g)(3) violates the Commerce Clause.  Mr. Davey acknowledges that the court "is bound by Tenth Circuit precedent interpreting 'affecting commerce' to deny this motion."  Doc. 17 at 22 (quoting *United States v. Patton*, 451 F.3d 615, 634–35 (10th Cir. 2006)).  Mr. Davey reports that he presents this argument solely to preserve the issue for appeal.  *Id.* at 23.

He has it right. The Tenth Circuit has upheld § 922(g) in the face of Commerce Clause challenges. *Patton*, 451 F.3d at 620–36 (following *Scarborough v. United States*, 431 U.S. 563 (1977), "which held that Congress intended a felon-in-possession statute to prohibit possession of any firearm that moved in interstate commerce" and "assumed that Congress could constitutionally regulate the possession of firearms solely because they had previously moved across state lines" and concluded that Congress has Commerce Clause authority to prohibit possession of bulletproof vests that had once travelled in interstate commerce); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009) (rejecting argument that § 922(g) exceeds Congress's Commerce Clause authority).

Mr. Davey is free to challenge binding Circuit precedent. But this court isn't. It thus rejects Mr. Davey's Commerce Clause challenge to § 922(g)(3).

## VI. Conclusion

The court concludes that all four of Mr. Davey's arguments for dismissal of Count II fail. The court thus denies his Motion to Dismiss (Doc. 17).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant Kyle Davey's Motion to Dismiss (Doc. 17) is denied.

**IT IS SO ORDERED.**

**Dated this 30th day of January, 2024, at Kansas City, Kansas.**

                                          **s/ Daniel D. Crabtree**
                                          **Daniel D. Crabtree**
                                          **United States District Judge**